Okay, the first case on the afternoon docket is Michelle Mitchell v. ADM Logistics, Archie Daniels Midland, et al. 525-0115. The appellant's ready? Yes, you may proceed, Mr. Nestor. All right, I just had to wait until everyone was done speaking and pull the chair out. Sorry. Gave me the trick chair. Mr. Nestor, your hand's on me. Hold on a minute. I am, Your Honor. Okay, perfect. Thank you. May it please the Court, Counsel. Thank you, Brett. I have the privilege and honor in representing my client, ADM. And for the record, there are two ADM defendants in this case in the ADM Logistics, Inc. and Archie Daniels Midland Company. I represent both, and they're both before the Court this afternoon. And did you just give your name for the record? Michael Nestor on behalf of ADM. I apologize, Your Honor. I know that this Court has an extensive history with regard to the doctrine of foreign nonconvenience. If memory serves, when I was a very young lawyer, a case that got a lot of attention that came out of Madison County was the case of Land v. Norfolk and Western Railroad, or Railway, perhaps. And that case ultimately found its place here in this courtroom and ultimately went up to the Supreme Court. But that case was decided in 1987. And since that time, there have been numerous cases addressing the issue of foreign nonconvenience, including cases decided by this Court. I think there's well over 100 cases that are in the system now wherein the doctrine of FNC was identified. But despite that history, I would suggest to you that the court case that is before you this afternoon is unique, one of a kind, and if one wants to use Latin, is sui generis. It's a one-off, if you will. There's nothing like it, at least from my perspective. And the reason for that is this. Plaintiff's counsel in this case intentionally and with full knowledge of the consequences thereof filed this case in Massachusetts County, Illinois. That was their choice. That was their decision. I'm assuming because they are good lawyers, it was an informed decision and they understood the consequences of that decision. And therefore, they pursued the litigation against my clients in Massachusetts County, not for one year or two years or three years, but four-plus years. And during that period of time, they engaged in discovery with regard to this case, which was robust. There's a lot of plaintiff's argument that they seem to emphasize in their brief a lot, too, that St. Clair County set a trial date immediately. Massachusetts County hadn't set a trial date in four years. Your Honor, I don't think that has any significance whatsoever. If you look at the history of the case in Massachusetts County, despite the fact that it was four and a half years of age, the case was actively pursued. Discovery, written discovery was pursued. Depositions were taken. I think at least ten depositions were taken in the case. And immediately before the case was voluntarily dismissed, there were discussions between counsel, plaintiff's counsel and defense counsel, with regard to the issues of, one, the disclosure of expert witnesses and, two, a trial date. And while that discussion was pending, and indeed, one of the last orders that was issued by the court, the court granted plaintiff's counsel initial time within which to disclose expert witnesses. And thereafter, almost immediately, a month or so thereafter, they voluntarily dismissed the case. But the trial court entered an order saying they could not give a trial date to the plaintiffs. There's an order entered by the trial court that said they could not give a trial date. No matter how much discovery you engage in, if you can't get to the courtroom, what good is it? Your Honor, that statement is made without context, so we don't know specifically. Did you get a trial date in Massachusetts County? In Massachusetts County? No, but that was under consideration. The court was going to allow them, the parties, to conduct further discovery with regard to the disclosure of expert witnesses and the deposing those expert witnesses. And thereafter, as I read the file, it appeared that they were going to then be given a trial date in Massachusetts County. So the court wasn't saying, you're not getting a trial date. The court was saying, be patient. There's other steps that have to take place or transpire before that point in time, and that's what the court was doing. But in St. Clair County, they got a trial date right away, and Judge Tripp made a docket entry on January of 2023 saying that she could not give the parties a jury trial date for 2024. So no matter how much discovery you conduct, if you cannot get to the courtroom, the case just gets older and older. I mean, witnesses lose memories. You know the whole argument about aging cases. How do you square that with not being able to get a trial date in Massachusetts County? Judge, again, I don't believe that the court was saying, you're not getting a trial date. It was a question of timing. The second point I would make is with regard to the Supreme Court review of the counties in the state of Illinois. I do indicate that cases are tried in Massachusetts County and that, in fact, they are identified as jury trials in Massachusetts County. So it's not as if you cannot get a trial. I don't know. I wasn't there. I wasn't present. I wasn't involved in representing ADM at the time. But the thing that appears to me most logical is that there was an impediment that would be temporary in nature. This is not a decision that the court makes and said, you're never going to get a trial date in this case. And I don't mean to insinuate that. Please wait, and I'll give you one when the opportunity presents itself. Right. I don't mean to insinuate that. I'm just following up on Justice McKinney's question, that you have movement of a case and you get an immediate trial date and you've got a docket entry where you weren't present, Mr. Nestor, but the court says they cannot give a docket entry of a trial date for the entire year of 2024. So, Judge, if I may give you some context with regard to St. Clair County, because I am more familiar with that county, the county that was born and raised in and practiced law in, it is typical for the judges in St. Clair County, for whatever reason, and I think each of the judges had different reasons, but I know I'm here in front of Judge Coker frequently, he always requests that the parties identify a trial date. And if we can't identify one, he will identify one. It's not for the purposes of locking in a trial date in regard to that particular case, because often this conference with a judge occurs maybe at the first hearing of the status conference, but he wants a trial date locked in early on with the understanding that, in all probability, that trial date will never be honored. It's a holding place, if you will, and then he uses that when he makes other decisions in the case, but often he's going to have a status conference, for example, in the case. Okay, but you're way beyond the record. I'm just telling you what my personal experience is, Your Honor. We're bound by the record, and we have an entry in the record that there was a trial date of May 2025 given in this case, and I think it got moved, probably because of this appeal, to December of 2025. If this case is decided before December, are you saying it's not going to trial? I am saying that, Your Honor. It's not ready to proceed to trial in December of this year. Okay. Under no circumstances could this trial proceed. Is there any discovery going on in the case? No. Discovery's been suspended because of the appeal. Why is that? Why is discovery suspended during a form nonconvenience case? I don't understand that. I think my recollection, Your Honor, is that we had a conversation before the judge in that regard, and we discussed it with the court, and the court had no problem with saying to us, if that's what you want, we'll set aside discovery and allow the FNC motion to pass. But that's my question, is why is discovery – the court didn't do it. Why is discovery between the parties suspended during a form nonconvenience? It was moving on in Massachusetts County from what you described, right? Yes, it was. That was my understanding, Your Honor. So why stay it during an appeal? Well, Your Honor, one, it's an informal stay, but I think each case is different. In this particular case, the parties were appearing before the judge. There was a discussion with regard to that issue, and I think my recollection is that everybody agreed that discovery would be stayed pending the appeal. Now, there are other cases that I have in St. Clair County where that doesn't transpire. The parties might say, no, we feel like it's necessary to go forward with discovery in some aspect of the case. For example, if there was a witness who had a health issue, we would not suspend discovery. We would go forward with taking that witness's discovery and then perhaps evidence deposition. But I think it's dependent upon the case and the facts and circumstances of the case. What effect do you think the scattered witness rule has on this case? Could you repeat that, Your Honor? I'm sorry. What effect do you think the scattered witnesses, I call it a rule, but the effect that there are witnesses located all over southern Illinois and in Missouri, what effect does that have on the forum issue? I think that inures to my client's favor or benefit in this case. And why is that? And that is because, Your Honor, in terms of the appropriate forum, yes, there are certain witnesses that are not in Massachusetts County, and that is true with regard to only a minority of the witnesses. Most of the witnesses that we've identified are closer to Massachusetts County than they are to St. Clair County. And so we think that if that is a rule, that rule would suggest that those witnesses closer to Massachusetts County would suggest that the court view Massachusetts County as the appropriate forum. I think the count that we took, and we were trying to be honest and fair in that regard, we thought the majority ten witnesses were closer to Massachusetts County and only six witnesses were closer to St. Clair County. So we think that is in our favor. Do you think our job as the appellate court is to select the county for you? No. Do you think that your job is to select the county for the plaintiff? Is that the burden of proof that you bring to the case? Your Honor, I think you're looking at it differently than I look at it. With regard to the Massachusetts County, that's understandable, that's fair, but that's the nature of the practice of law. If we all agreed, we probably wouldn't have a job, right? So, Your Honor, with regard to that particular issue, there is no doubt that Massa County is the forum in which this case should be tried as compared to St. Clair County. St. Clair County has only one connection to this case, and it's not tenuous, but it is a plant that used to be, I thought, in East St. Louis, Illinois, but now it's Soja, Illinois, apparently, which is in St. Clair County. So that establishes venue. That's a given. We understand that. But there's nothing else in regard to this case that has a footing or a tie or a tether in St. Clair County. There's absolutely nothing. Whereas, if you look at Massa County, for example, the very first thing that jumps out, it's the place where the accident occurred. Okay? That's significant. In addition to that, all of the key witnesses at or at the time of the accident were from the area of Massa County. Isn't that true, Mr. Messer? First responders. The driver was not from there. The driver was from Kentucky. The truck driver. Well, the truck driver wasn't, but the driver of the vehicle that was involved in the accident. Was she from Massa County? She was from Paducah, Kentucky. Paducah, Kentucky. But she was closer to Massa County than St. Clair County. Where does she live now? The latest information we have is she lives in Paducah, Kentucky. Okay. Who lives in Missouri? Which party lives in Missouri now, do you know? I think at one time she may have lived in Missouri, but she no longer lives there. That's my understanding based upon the information we have currently. Okay, I think the briefing indicates that she's in Missouri. But I think that we corrected that, and I think we've indicated that her residence is now Paducah, where she was at the time of the accident. My question to the defendant remains the same. What is the defendant's burden in a form nonconvenience case? Is it to show that the form is better suited for the defendant, or is it to show something related to the plaintiff's choice of form? It's perhaps different than the two examples that you've given me, I think. Well, I'm asking you what it is. What is the defendant's burden to show in a form nonconvenience case? If I may, Your Honor, at this moment in time, the burden is to establish that Judge Coker abused his discretion in not transferring the case to Massa County. And why would it be transferred? What is the burden of the defendant under the case law? The burden is that we have to identify all those factors that make a trial in Massa County fairer and more reasonable than it would be in St. Clair County, because not necessarily because of the lawyer's convenience, but because of the parties' and the witnesses' convenience, okay? And so that's taken into consideration, and we think in this particular case, because the accident didn't occur in St. Clair County. The plaintiff is not from St. Clair County. The only tie or tether to St. Clair County is the plant, which has nothing to do with this case whatsoever. I think the facts of the case are very clear in that regard. It's serendipitous, if you will, that they had a plant in St. Clair County, but serendipity only extends so far. It has a consequence, and that is venue is appropriate. But nothing else is appropriate. Nothing else is tied to the facility in St. Clair County with regard to this case. It's totally and absolutely irrelevant to this case. Okay. Do you have a question? No. Your time is up. They're just now. You'll be given some time for rebuttal, but we need to hear from the apple leaf. Thank you, Your Honor. You're welcome. Good afternoon, Your Honors. My name is Michael Roszak. I'm here on behalf of the Plants vs. Apple Leafs. I do agree with my opposing counsel on one thing. We do have a somewhat unique case in that it's seldom. I'm not sure I've seen another case where no one is connected with the scene of the accident. I mean, obviously, where the accident occurs is always a factor to be considered, but I'm not sure I've ever seen a case where no one has a connection to Massachusetts County. Counsel, when you refiled in St. Clair County, did you do that on the sole basis that ADM operates the Saw J facility? That's the venue. That's why they chose St. Clair County because the Saw J terminal provided venue in St. Clair County. What does that have to do with foreign contact? That facility had absolutely nothing to do with this accident, right? And that's where I would disagree with Your Honor, where I would disagree with my opposing counsel. It's because this case has a larger picture to it. We've alleged much more than the accident. We've alleged two things, one that ADM and Decatur was acting in concert with and was allowing poor drivers to be on the road, and we've alleged that through agencies. That employing drivers who should have been on the road is something that affects all of ADM's drivers. She was driving, Hart was driving for ADM. If this business in St. Clair County of ADM was a one-stop thing, that might not be true. But according to what we've seen online, ADM runs a very, very large facility, which means its drivers are coming and going to unload things at that facility for transport all over. That, we believe, is a connection to the people who live in St. Clair County. If we're not talking about one driver who kind of cut through the county, we're talking about drivers whose, at least what we see on the police, drivers whose safety records are relevant to driving in that county. We believe it's a broader picture, and that's the connection to the county. And then the next question is, what is more convenient, the burden, to go back to Justice Gates' question. It would take four years to transition to refiling the case. Yes. Would that sell Judge Kavarjian? It could, except in this case, the trial court judge in St. Clair County accepted our rationale for doing what we did, and that was because we could not get a date in Massachusetts County. It wasn't just a delay. We were told in 1923 at the beginning we couldn't get a date for two years. At that point, once they found venue, the only place I can think of where venue would be in St. Clair, then they moved the case here. None historically that they would get a new trial, and they got a trial date immediately. So this is the only case that I've seen where a defendant resisting a new filing is saying that you tried to escape another county. In the cases that they cite for that proposition that Your Honor is talking about, Bruce and Smith and a couple of others in that bill, plaintiffs were clearly trying to escape something in the venue in which they were in and move it out. They didn't have trial dates. In fact, they had trial dates in those cases in the county where they were leaving. Here, we don't have any of that. We moved out of there to get a trial date, and the trial court judge accepted that as a rationale. In their argument, the defense brief says that the trial court judge, defense says we argued it, but the defense says the trial court judge totally discounted any of that. Instead, he prompted that refiling was not a factor. The trial court was right, and I think that they were wrong. They may just be using different terms for the same things. Refiling is not one of the factors that shows up in the Supreme Court's cases discussing new venue, but it isn't. They've called it an overall consideration, and I think they looked to see why it refiled in the cases where the plaintiff's attempt to move the case was rejected. They were pretty clearly held on a limb. In each case, they had trial dates where they were. Almost all cases had trial dates where they were, and there were almost always contacts with that county. In other words, the county where the case was was always a case where either the defendant lived or something had occurred in that county or the malpractice occurred in that county. Nassau County could be more fortuitous, and they disagree with my statement about that, but there's nothing about this accident to connect it to Nassau County so that the residents there would have a reasonable belief that it should be tried there. If I was a resident of Nassau County, what are you doing? There's an accident out on the interstate. It involves a bad truck driver. We don't have any more interest than anyone else. I don't have a case precisely on that point because I think, as counsel said, this is somewhat unique. So I think it's going to depend on where the court starts with the analysis. If the court starts with simply looking at an accident in the county, I have more uphill battle. If the court looks at the entire pleadings, that ADM acted as a principal, that ADM was putting unfit drivers on the road, now we've expanded the universe, so Nassau County, in that case, is not a much better venue. What would make it a better venue? Nobody lives there. Nobody resides there. Nothing happened there. It simply happened to be the first place that we filed because the accident happened there. Once we filed, then we could obtain venue in a place where the court specifically said, we will and we gave you a trial date. The trial court judge specifically said, this is probably a better place for you. We have all that you need to try a big case here. We have the technological equipment that you need. Nobody disputed that in court. I think that's the separate angle on this case. And it goes back to, and we acknowledged this, in the Starr case, I believe it was the Starr case, where the court said, it's not a balancing act by this court. These cases can go either way. This case could be brought up on the same motion, same facts, before a different judge in St. Clair County, and I might be the party who is being the appellant. But either decision is not untethered to the facts. The trial court judge read his 18-page order. The judge went through everything. The judge clearly acknowledged that this court wants the facts discussed in its opinion. And he did all of that. Even if you disagree that it was, whether that was a right decision, it was still a valid decision. It's not a decision where, I think it was the Smith case, where the trial court judge just did some wrong things. Gave consideration to the precedents of parties, of people, defendants who are no longer parties to the case. Ignored the fact that the case had no ramifications beyond the county where the accident happened. It all had to do with one drugist in one county. It's just the opposite of that. It has to do with everybody. I think in some regards it's closer to, if I'm saying it right, a Sefnesic case involving a pump house in St. Clair County. In that case, the court said it was a wrongful termination because he filed a worker's comp claim. The court said none of the defendants resided in St. Clair County. And nothing happened in St. Clair County involving that accident. There were some witnesses to the termination that happened to reside in St. Clair County. But the event itself, the defendants themselves, and the plaintiff himself were not there. And this court, nonetheless, allowed that denial of transfer. I think in this case the court's faced with pretty much the same proposition, unless, as I said in my brief, unless the appellate court's going to, I used a term, not a legal term, second guess. It's making it hard on the trial court judges. They don't know which way to go. But when they do reach a rational decision, whether it's for my side or their side, and there's no clear error in it, then I'm not sure why those cases should be overturned. That would actually be probably my concluding line. I wanted to... What is the standard of review for reversing the trial court's decision? Clear, clear. There's a discretion. All the cases have said that. And the burden on the defendant below was to show that some other venue was much better served, the interest of justice. That's the problem. They didn't have a venue to go to. They don't like the venue they were in. But they can't really send it to... In light of the broad nature of this case, of the issues, they didn't have a case, a court in the county that they could send this case to, that they could say, here's a better county. Did they get to pick the county? No. I mean, they could go to Massach County. I'm sorry, they could go to Macon County. They could have. They could have asked to transfer the case to Macon County. But they don't get to ask for that. They don't. And they didn't even argue. There are cases out there where defendants have... I've seen them, maybe before as well. Where defendants have suggested, we want to transfer it to more than one county. We want it to County A or County B. And they didn't take that alternative arc here. They just said, they have to have a venue that's got... I think we all agree. They have to pick a venue that's got more context, more... The word I'm looking for is ease of participation by the parties, ease of conducting the trial. They can't find a case, a county here, that offers that. If they had argued for a transfer, if they said, alternative B, here's a better county, it should have gone there, to where Decatur is, I might have a tougher argument. But they didn't do that. I presume they had a reason for not doing that. It may be that they were concerned with where some of the parties live. Some of the parties here, by the way, our state, there was mention of the fact that where the plaintiff lives. But the record does go both ways on that. In the long brief, they note that originally, at one point, she said, Ms. Mitchell said she lived in Missouri. There's a later pleading by her lawyer in the third party action answer. I'm sorry. There's an answer later on to a complaint against her that she lived in Kentucky. But the bottom line is that, and I don't know that the court has discussed this, are we going to look at convenience for people who are out of state? We can't control people who are out of state, so why would their convenience necessarily come into play? We can't make them come here anyway. In all likelihood, given that it's, what, eight years since this accident? I'm talking about Laura Leadingham in particular. She's in Kentucky. She's going to be deposed either by video evidence in all likelihood. We just can't make her come in. So her convenience, and as to the plaintiff's convenience, the plaintiff's convenience is simply not something that the defense can rely upon, and that's always been the law. Wherever the plaintiff files, it's deemed convenient for them. There was only one other witness. That was Tia Hart. They said I did not mention Tia Hart. She lives in Kentucky. The reason she wasn't mentioned is she was only 14 at the time of the accident. She clearly, if you've read the police report, clearly has what happened wrong, and nobody is going to call her and put her on the witness stand in this case. She might be a factor, but she's sort of a small factor. Nobody would put that 14-year-old girl, now an adult, on the witness stand when there are two eyewitnesses who saw exactly what happened. Unless the Court has further questions of me, we simply ask that the Court affirm the exercise of discretion below. Thank you. Thank you. Mr. Nestor. Thank you for allowing me to appear. Excuse me. One issue that I want to address initially is with regard to Judge Tripp. I didn't want to leave the impression that with regard to this issue of the trial date that she was abandoning this case. She no longer kept her finger on the pulse of the case and didn't know what was going on and wasn't shepherding through the process. Judge Gates is correct that on January 23, 2023, Judge Tripp did make an order that reflects the following, quote, attorneys appear to assume for CMC, case management conference, court unable to give 2024 jury trial date, close quote. Then she goes on to say, quote, we'll address that next hearing, close quote. So she hasn't abandoned this idea of giving them a trial date. She said she was going to address that at the next hearing. And so that gives the Court more context, hopefully more context than I provided to them earlier. In addition to that, the Court continued to keep her finger on the pulse of the case because after the joint January 23 entry, on February 27, 2023, Judge Tripp entered the following order, court takes plaintiff's motion to compel, arguments heard, court takes under advisement. Then on March 6, about another month later, she enters another order. Judge Tripp entered an amended scheduling order extending expert witness discovery for 60 days. So she hasn't abandoned this case. So she continued discovery? Yes. Okay. Is that the burden in a form nonconvenience case is whether a judge keeps their finger on the pulse? I mean, what are we talking about here? Judge, the only reason why I'm raising that is because I thought that I may have left a misconception in answering your earlier inquiry, and I wanted to correct that. She was actively engaged and involved in this case. I didn't want to have the Court think that she entered the order, she can't provide a 2024 trial date, and then she closed the file and abandoned it for the rest of the year. That did not happen. I don't think anybody has suggested that, but she clearly couldn't provide a 2024 trial date. My question is the same as to your opposing counsel. The defendant has the burden to show that the public and private interest factors weighed by the trial court were not an abuse of discretion. Isn't that the rule? It is the rule, yes. So don't we give judgments to the trial court when they make those decisions on the factors? I mean, isn't that our most deferential standard? I don't know if it's the most deferential standard, Your Honor, but the point is that that is the standard, and we believe the facts of this case support application of that standard to this case and require the case to be dismissed in St. Clair County and transferred to Massac County. Again, the only thing that tethers this case to St. Clair County is the ADM facility. Nothing else transpired, even remotely close to St. Clair County, to involve St. Clair County with regard to this issue. Massac County has numerous contacts with this case, including where the accident occurred, the drug, the investigation with regard to the accident, the drug conviction of one of the drivers of the vehicle involved in the accident, the medical care initially to the individuals who were involved. There's a myriad of connections to this case in Massac County and not one to St. Clair County. What about their argument here today about the drivers? Has that been implied? Not that I'm aware of. The fact that the drivers are on the road and they use the facility in Xochitl and that argument we just heard. Not that I'm aware of, Your Honor, and the concern that I have is that I understand this case when it's probably, hopefully in Massac County rather than St. Clair County, that the jurors would be instructed that they make their decision based upon the evidence that they hear in that courtroom from the parties who are in the midst of litigation in that courtroom. They don't expand it beyond that and say, well, gee, I wonder how safe the roads are going to be in Massac County with this type of occurrence transpiring. That's not their duty. That's not their obligation. And if they did that, I would suggest to you, kindly suggest, that that would be reversible error. They're not supposed to be speculating on how safe their roads are based upon. My question was. I thought that was the statement that was provided to you. I apologize, Your Honor. Okay. My question is if the pleadings in this case talk about the training that goes on at the ADM facility at Xochitl, as I heard him argue. That's what I heard him argue. That there's allegations at least that the drivers go in and out of Xochitl. And I'm asking. Your Honor, if I may answer. Thank you for the clarification. There is absolutely no evidence that either the driver of this truck at the time of the, who was driving at the time of this accident, or Bay, who she worked for, ever set foot in the Xochitl plant of the ADM in St. Clair County. There's absolutely no evidence of that whatsoever. Okay. In fact, the evidence is to the contrary. They've said, no, we've never been to Xochitl. That's not on our run. That's not within our territory to cover. We've never been there. And I didn't see that in the trial court's order. Am I correct on that? I think you may be correct. But, Your Honor, that is the truth in terms of what transpired in the depositions in the case. No more questions. Okay. Thank you. Unfortunately, it goes quickly. That's been a pleasure. Have a good day. I appreciate it. Thank you. Thank you for your arguments here today. This matter will be taken under advisement. We'll issue an order in due course. We appreciate it.